UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RANDALL EDGAR WILLIAMS, | ) | 1:08-cv-1523 OWW GSA |
| | ) | |
| Plaintiff, | ) | FINAL PRETRIAL ORDER |
| | ) | |
| v. | ) | Motion in Limine Date: |
| | ) | 8/20/10 11:00 Ctrm. 3 |
| MICHAEL J. TROEHLER, City of | ) | |
| Fresno Police Officer, | ) | Trial Date:  8/31/10 9:00 |
| | ) | Ctrm. 3 (JT-5 days) |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |

## I.   JURISDICTION AND VENUE

1.   Jurisdiction exists under 28 U.S.C. § 1331 and 42 U.S.C. § 1983, et seq.

## II.   JURY/NON-JURY

1.   The parties request a jury trial on all triable issues.

## III.   FACTS

A.   Undisputed Facts

1.   At all times relevant to this action, Defendant Michael Troehler was acting in the course and scope of his employment as a police officer for the City of Fresno, and acting under color of law.

2.   On August 25, 2006, Defendant issued Plaintiff a

1

citation for violation of California Vehicle Code §§ 22350 (speeding); 52002 (no plates); 76028a (no insurance); and California Penal Code § 148a (delaying, resisting and obstructing an officer in the performance of his duties).

3.     Following his arrest, Plaintiff was taken by Defendant to University Medical Center for medical attention.

B.     Disputed Facts

1.     Whether the force used by Defendant Troehler was objectively reasonable under the circumstances he confronted, from the perspective of a reasonable police officer on the scene.

2.     Whether Plaintiff resisted arrest.

3.     The nature and extent of Plaintiff's injuries and damages.

4.     Whether Defendant Troehler's acts were malicious, oppressive, or in reckless disregard of Plaintiff's rights.

IV.   DISPUTED EVIDENTIARY ISSUES

A.     Plaintiff's Anticipated Motions in Limine.

1.     To preclude evidence not produced in discovery.

2.     To preclude improper comments regarding damages, including any inquiry, comment or argument before the jury that suggests jurors as taxpayers will be paying the amount of any damages awarded.

3.     To preclude evidence of collateral payments.

4.     To preclude Defendant's retained experts, Harold L. Seymour, Ph.D., and Paul J. Markovitz, M.D., Ph.D., from opining with regard to Plaintiff's bipolar disorder or his medication.

5.     To preclude Defendant's retained experts from testifying at trial as to ultimate facts, the credibility of

2

witnesses, legal conclusions, past experiences or claims of success; and from giving opinions that lack foundation.

6.    To preclude evidence of any other lawsuits or claims made by or against Plaintiff, including but not limited to the criminal prosecution arising out of the subject incident.

7.    To preclude evidence including questions regarding Plaintiff's prior contacts with law enforcement for any reason, or disputes with other persons.

8.    To exclude confidential medical records and testimony concerning injuries or conditions unrelated to the claims made in this action.

9.    To exclude post-incident investigation reports.

10.   To exclude evidence relating to Plaintiff's liability expert, Darren Hise's personnel actions and pending litigation.

11.   To exclude evidence relating to any purported incident of domestic violence involving Plaintiff or his wife;

12.   To exclude witnesses not disclosed timely in discovery or pursuant to Rule 26.

13.   To exclude evidence relating to any purported substance abuse by Plaintiff.

14.   Plaintiff reserves the right to file any other necessary motions in limine in accordance with the schedule set by the court.

B.    Defendant's Anticipated Motions in Limine.

1.    To preclude evidence not produced in discovery.

2.    To preclude improper comments regarding damages including any inquiry, comment or argument before the jury that suggests that jurors should base plaintiffs' damages on an amount

3

1  that the jurors would charge to endure similar injuries.

2      3.    To preclude evidence of liability insurance.

3      4.    To preclude evidence of indemnification of Defendant

4  Officer Troehler by his employer.

5      5.    To exclude Plaintiff's retained expert, Darren Hise,

6  from rendering opinions regarding police practices and procedures

7  based on lack of qualifications to do so.

8      6.    To preclude Plaintiff's retained expert from testifying

9  at trial as to ultimate facts, the credibility of witnesses,

10  legal conclusions, past experiences or claims of success; and

11  from giving opinions that lack foundation.

12      7.    To preclude evidence of any other lawsuits against

13  Defendants, or any other City of Fresno Police Department

14  Officer.

15      8.    To preclude evidence that is protected by California

16  Penal Code § 832.7 and § 832.8, and California Evidence Code

17  § 1040 and § 1043, and the officers' rights to privacy, including

18  questions regarding personnel matters, prior complaints

19  concerning job performance or prior disciplinary issues as to the

20  Defendant officer or any other City of Fresno Police Department

21  officer who testifies in this matter.

22      9.    Defendants reserve the right to file any other

23  necessary motions in limine in accordance with the schedule set

24  by the court.

25          **V.  SPECIAL FACTUAL INFORMATION**

26  A.   <u>Plaintiffs.</u>

27      1.    Plaintiff contends that he was beaten by Defendant

28  Troehler and sustained injuries to his head, left ear, and neck

**4**

1  as a result of the beating and to his right wrist by reason of

2  the handcuffs as used by Defendant Troehler.

3      2.    Plaintiff was transported from the scene to UMC

4  following the incident.  Prior to being transported, photographs

5  were taken of Plaintiff's head and face depicting injuries to his

6  face, the left side of his head and neck, his left and left

7  shoulder.  Plaintiff next sought medical care for matters which

8  he relates to the incident in December 2006 for left ear pain.

9  Then in March of 2007 when he saw his family practitioner, Dr.

10  Sukhbir Manjal who at that time ordered x-rays of his wrist and

11  MRI of his neck.

12      3.    The MRI revealed severe degenerative disc disease at

13  C6-7 and he was referred to Dr. Ali Najafi, a neurosurgeon.  Soon

14  thereafter, Dr. Najafi performed a cervical fusion which

15  procedure was necessitated by the degenerative condition of

16  Plaintiff's neck, not the subject incident.

17      4.    Plaintiff was also referred to Dr. Hongshik Han, a hand

18  and plastic surgeon.  Plaintiff had arthritic changes in both

19  wrists but left wrist joint was essentially destroyed, most of

20  the ligament was torn off and worn, indicating it was a chronic

21  condition.  The right wrist had a tear but there was no evidence

22  of degeneration, so Dr. Han believed it was relatively recent in

23  origin.  In June 2007, Dr. Han performed a right wrist

24  arthroscopy which revealed a right ligament tear but no arthritis

25  which indicated that the ligament could be repaired.  The repair

26  could not be done until after the cervical fusion.  In January

27  2008, Dr. Han surgically repaired the torn ligament and

28  reinforced it with wires and pinned the wrist to allow the

1  ligament to recover.

2      5.    Williams was placed in a cast while his wrist was
3  recovering.  He had problems with the cast and the wires.  His
4  recovery was difficult and he removed some of the wires himself.
5  He reinjured his hand.  In October 2008, Dr. Han performed what
6  he referred to as a "salvage" procedure, a proximal row
7  carpectomy, on the right wrist which involves removal of four
8  bones in the wrist reducing it to a single joint.  The surgery
9  was successful in dramatically reducing if not eliminating the
10  right wrist pain.

11     6.    In connection with the above summarized injuries and
12  treatment, Plaintiff is claiming the following expenses:

13         University Medical Center (08/25/06)    $   293.11
14         CCFMG (08/25/06)                        $   154.00
15         Calif. Imaging Institute (03/08/07)     $   343.00
16         Hongshik Han, M.D. (05/03/07)           $   658.00
17         Pacific Medical (05/03/07)              $   200.00
18         Clovis Community Hospital (06/18/07)    $   558.70
19         Clovis Community Hospital (06/22/07)    $6,394.08
20         Hongshik Han, M.D. (06/26/07)           $1,450.00
21         Hongshik Han, M.D. (11/27/07)           $   250.00
22         Hongshik Han, M.D. (12/27/07)           $   155.00
23         Clovis Community Hospital (01/10/08)    $1,173.85
24         Clovis Community Hospital (01/14/08)    $11,321.95
25         Hongshik Han, M.D. (01/15/08)           $2,550.00
26         Hongshik Han, M.D. (01/29/08)           $   100.00
27         Advanced Medical Imaging (03/31/08)     $    92.00
28         Hongshik Han, M.D. (05/29/08)           $   155.00

```
 1    Clovis Community Hospital (10/21/08)      $  334.99
 2    Clovis Community Hospital (10/24/08)      $8,666.60
 3    Hongshik Han, M.D. (10/28/08)            $5,150.00
 4    Advanced Medical Imaging (12/02/08)       $   92.00
 5    Hand to Shoulder Rehabilitation          $8,013.00
 6    Community Medical Providers
 7       (Sukhbir Manja, M.D)                   $  240.00
 8    Sears Optical                            $  399.98
 9                    TOTAL                    $48,745.26
```

B.   **Defendants**

1.   When Plaintiff was seen at University Medical Center following the incident he was noted to have a superficial laceration to his right eyebrow and abrasion.  He did not complain of neck pain, wrist pain or shoulder pain.  He returned to work immediately after his release from custody.  He did not seek further medical treatment until December of 2006, four months after his arrest.

2.   Medical records reveal that Plaintiff had prior complaints of the same nature as his complaints after the incident.  Prior to the incident he was seen for neck and arm pain, and a bulging disc in his neck.  He was also seen for problems related to both hands; and had carpal tunnel surgery in 1998.  Plaintiff's surgeon, Dr. Han, testified that Mr. Williams has an explosive personality to the point where Dr. Han and his staff had concerns that Plaintiff would become violent.  At one point during his recovery from surgery, Mr. Williams became so angry he pounded his truck with his fist, damaging a wire that Dr. Han had inserted into his wrist during surgery.  According to

7

1  Dr. Han, Plaintiff's violent reaction prevented his wrist from
2  healing thereby necessitating a second surgery.

3       3.   Plaintiff has a long history of taking numerous
4  addictive controlled substances including Vicodin, Valium, Darvon
5  and Darvocet; and a history of being prescribed multiple
6  psychotropic medications.  Defense experts in psychology and
7  psychopharmacology concur that Mr. Williams has borderline
8  personality disorder.  Borderline personality presents with
9  extreme anger problems, bouts of depressed mood, anxiety and
10 impaired judgment.  Individuals with this disorder tend to feel
11 persecuted for no reason, are highly and inappropriately reactive
12 to stress and tend to over-respond with rage and anger.  Mr.
13 Williams' problems with anger are well documented in the medical
14 records and prior and subsequent contacts with law enforcement.

15                    VI.   RELIEF SOUGHT

16      1.   Plaintiff seeks general damages, special damages,
17 punitive damages, attorneys' fees pursuant to 42 U.S.C. § 1988,
18 and costs of suit.

19      2.   Defendant seeks a defense verdict, and costs of suit
20 and attorney's fees pursuant to 42 U.S.C. § 1988 should he
21 prevail in this action.

22             VII.   DISPUTED ISSUES OF LAW

23 A.   Plaintiffs Summary of Claims.

24      1.   Plaintiff is making three legal claims, all arising out
25 of the same set of facts, to wit: (1) civil rights violation
26 pursuant to 42 U.S.C. § 1983 for excessive force; (2) assault and
27 battery; and (3) negligence.

28 ///

                              8

1    **Excessive Force**.

2    2.    Every person has the right not to be subjected to

3    unreasonable or excessive force while being arrested, even though

4    such arrest is otherwise made in accordance with due process.

5    While an officer has a right to use such force as is necessary

6    under the circumstances to effect the arrest, the degree of force

7    is limited to that which a reasonable and prudent officer would

8    have applied under the circumstances disclosed in the case.

9    3.    Whether the force used was unnecessary, unreasonable or

10   violent is an issue to be determined in light of all the

11   surrounding circumstances.   Factors to consider in determining

12   whether an officer used excessive force are the severity of the

13   crime at issue, whether the Plaintiff posed a reasonable threat

14   to the safety of the officer or others, and whether the Plaintiff

15   was actively resisting detention or attempting to escape.   (Model

16   Jury Instructions, 9th Circuit, No. 11.4).

17   4.    It is Plaintiff's contention that Defendant's

18   initiation of force and continued use of force upon Plaintiff in

19   connection with this traffic stop was unnecessary and

20   unreasonable.   Plaintiff did not actively resist detention nor

21   attempt to escape.

22   **Assault and Battery**.

23   5.    Under California law, as set out in CACI 1305, battery

24   by a police officer requires Plaintiff establish the following:

25            a.    That Defendant intentionally touched Plaintiff;

26            b.    That defense used unreasonable force to arrest

27   Plaintiff;

28            c.    That Plaintiff did not consent to the use of that

9

1  force;

2       d.   That Plaintiff was harmed; and

3       e.   That Defendant's use of unreasonable force was a
4  substantial factor in causing Plaintiff's harm.

5       6.   A person being arrested has a duty not to use force to
6  resist the officer unless the officer is using unreasonable
7  force.  In deciding whether Defendant used unreasonable force,
8  the jury must determine the amount of force that would have
9  appeared reasonable to a police officer in Defendant's position
10 under the same or similar circumstances and should consider the
11 following factors, among others: (1) the seriousness of the crime
12 at issue; (2) whether Plaintiff reasonably appeared to pose an
13 immediate threat to the safety of Defendant; and (3) whether
14 Plaintiff was actively resisting arrest or attempting to evade
15 arrest.  (CACI 1305).

16      7.   Plaintiff contends that at the time Defendant initiated
17 his use of force, Plaintiff was attempting to comply with
18 Defendant's demand for evidence of insurance.  Plaintiff had not
19 threatened Defendant, verbally or by gesture.  Defendant
20 continued to use force, striking Plaintiff about his head and
21 neck, while Plaintiff was on the ground and not doing anything
22 except trying not to get injured.  Plaintiff made no effort to
23 strike back or otherwise threaten Defendant; Plaintiff engaged in
24 no force whatsoever.

25      8.   California Penal Code § 834a provides that a person who
26 "should have knowledge, that he is being arrested by a peace
27 officer, it is the duty of such person to refrain from using
28 force of any weapon to resist such arrest."  Plaintiff did not

1  use any force nor any weapon.

2      **Negligence**.

3      9.   Under California law, to prevail on a theory of

4  negligence, Plaintiff must establish that Defendant was

5  negligent; that Plaintiff was harmed; and that Defendant's

6  negligence was a substantial factor in causing Plaintiff's harm.

7  (CACI 400).  A person is negligent if he does something that a

8  reasonably careful person would not do in the same situation or

9  fails to do something that a reasonably careful person would do

10  in the same situation.  (CACI 401).

11      10.   Defendant undertook the use of force when he knew that

12  Plaintiff was still trying to eliminate the issue of his

13  insurance.  Defendant did not explain to Plaintiff that if he

14  refused to sign the citation he would be arrested.  In failing to

15  explain to Plaintiff the consequence of refusing to sign the

16  citation, Defendant created the need to physically arrest

17  Plaintiff.  There is no evidence Plaintiff heard or understood he

18  was being placed under arrest when he pulled his arm away from

19  Defendant, who was grabbing him from behind.  Defendant used

20  force to trip Plaintiff onto the ground and then started kneeing

21  him about his head and neck until he could get Plaintiff's arms

22  out from underneath Plaintiff's body and put handcuffs on him.

23  B.   **Defendants**

24      **Federal Claims**.

25          **Fourth Amendment Unreasonable Search and Seizure Claim**.

26      1.   Plaintiff claims that Officer Troehler used excessive

27  force in affecting his arrest on August 25, 2006.  Under the

28  Fourth Amendment, a police officer may use such force that is

1  objectively reasonable under the totality of the circumstances.

2  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  An unreasonable

3  seizure occurs when a law enforcement officer uses excessive

4  force in making a lawful arrest.  Factors to consider in

5  determining whether an officer used excessive force are the

6  severity of the crime at issue, whether the Plaintiff posed a

7  reasonable threat to the safety of the officer or others, and

8  whether the Plaintiff was actively resisting detention or

9  attempting to escape.  *Blanford v. Sacramento County*, 406 F.3d

10  1110, 1115 (9th Cir. 2005).  An officer need not avail himself of

11  the least intrusive means of responding to a situation; he need

12  only act within a range of conduct that is reasonable.  *Scott v.*

13  *Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

14       2.   Plaintiff was confrontational from the onset of his

15  contact with Officer Troehler.  He was subject to arrest when he

16  refused to sign the traffic citation and walked away from Officer

17  Troehler.  Officer Troehler told him he was under arrest and

18  attempted to take him into custody by grabbing his arm, but

19  Plaintiff pulled away, escalating the situation.  Plaintiff

20  continued to resist after Troehler took him to the ground.

21  Officer Troehler was concerned because Plaintiff had a sharp

22  edged tool on him; and there were other subjects that could

23  possibly intervene.  He needed to get the situation under control

24  quickly.  He applied 2-3 knee strikes to the side of Plaintiff's

25  head to distract Williams and gain control.  As soon as Mr.

26  Williams stopped resisting, Officer Troehler stopped striking him

27  and applied the handcuffs.  It is Defendant's contention that

28  under the totality of the circumstances, the force used was

1   necessary and reasonable.

2        **Qualified Immunity Defense**.

3        3.    Qualified immunity protects Section 1983 defendants

4   "from liability for civil damages insofar as their conduct does

5   not violate clearly established statutory or constitutional

6   rights of which a reasonable person would have known."  *Harlow v.*

7   *Fitzgerald*, 457 U.S. 800, 818 (1982).  "As the qualified immunity

8   defense has evolved, it provides ample protection for all but the

9   plainly incompetent or those who knowingly violate the law."

10  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

11       4.    The threshold question which a court must consider in

12  ruling upon the defense of qualified immunity is, "[t]aken in the

13  light most favorable to the party asserting injury, do the facts

14  alleged show the officer's conduct violated a constitutional

15  right?"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the

16  Plaintiff's factual allegations establish a violation of the

17  Plaintiff's federal rights, then the court must proceed to the

18  second determination as to whether the right was "clearly

19  established."  *Id.; Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th

20  Cir. 2001).

21       5.    It is Defendant's position that a reasonable officer in

22  Officer Troehler's position could have believed that the force

23  used was lawful under the circumstances.

24       **Punitive Damages**.

25       6.    Plaintiff is seeking an award of punitive damages.

26  Punitive damages are only proper under 42 U.S.C. § 1983 when the

27  Defendant's conduct is shown to be motivated by evil motive or

28  intent when it involves a reckless or callous indifference to

1  federally protected rights of others.  *Smith v. Wade*, 461 U.S.
2  30, 56 (1983).  Defendant submits that there is no evidence to
3  support plaintiff's claim for punitive damages.

4      State Claims.

5          Assault and Battery.

6      7.    An officer is entitled to use reasonable force to
7  detain a person when he or she has reasonable cause to believe
8  that person has committed a crime.  Plaintiff has the burden of
9  proving unreasonable force.  *Edson v. City of Anaheim*, 63
10 Cal.App.4th 1269, 1272 (1998).

11     8.    An officer who makes or attempts to make an arrest is
12 not required to retreat or cease from his or her efforts because
13 of the resistance or threat of resistance of the person being
14 arrested.  California Penal Code § 835a.

15         Negligence.

16     9.    The elements of a negligence claim are: (1) a legal
17 duty to conform to a standard of conduct to protect the
18 plaintiff; (2) a failure to meet this standard of conduct; (3)
19 causation; and (4) damages.  *Ladd v. County of San Mateo*, 12
20 Cal.4th 913, 917 (1996).  Defendant contends that he acted as a
21 reasonable officer would act under similar circumstances.

                    VIII.  ABANDONED ISSUES

23     1.    Plaintiff withdrew his claim for intentional infliction
24 of emotional distress (third claim for relief) when Defendant
25 filed a motion to compel disclosure of psychiatric records and an
26 independent psychiatric examination.  Defendant was denied the
27 discovery requested based on Plaintiff's withdrawal of this
28 claim.  Plaintiff is also not making a claim for business losses.

                              **14**

1                                  IX.   WITNESSES

2   A.    Plaintiffs

3         1.    Edward Brady
                31 E. Saginaw #20
4               Fresno, CA

5         2.    John Camacho
                3325 W. Church
6               Fresno, CA

7         3.    Eduardo Cerda
                646 N. Virginia
8               Farmersville, CA

9         4.    Dr. Hongshik Han
                7005 N. Maple Avenue
10              Fresno, CA

11        5.    Darren Hise
                P. O. Box ____
12              Merced, CA

13        6.    Robert Hooks
                4591 N. Blackstone
14              Fresno, CA

15        7.    Dr. Sukhbir S. Manjal
                1570 E. Herndon
16              Fresno, CA

17        8.    Mark Paulson
                5250 N. Brooks
18              Fresno, CA

19        9.    Able Ramirez
                3835 N. Thorne
20              Fresno, CA

21        10.   Jesus Rios
                564 S. Cedar
22              Fresno, CA

23        11.   Christina Servin
                3040 N. Bliss
24              Fresno, CA

25        12.   Michael Troehler

26        13.   Randall Williams
                132 N. Peach
27              Clovis, CA

28   ///

14.   Sandra Williams
      132 N. Peach
      Clovis, CA

B.   **Defendants**

1.    Eduardo Cerda
      646 N. Virginia
      Farmersville, CA

2.    Alberto Jiminez
      17504 W. Shaw
      Kerman, CA 93630 (last known address)

3.    Robert Oldham
      9835 N. Backer Ave.
      Fresno, CA 93720

4.    Jesus Rios
      564 S. Cedar Apt. F
      Fresno, CA

5.    Abel Ramirez
      3835 N. Thorne, Apt. G
      Fresno, CA

6.    Christina Maria Servin
      3040 N. Bliss
      Fresno, CA

7.    Sandra Williams
      132 N. Peach
      Clovis, CA

8.    Randall Williams
      132 N. Peach
      Clovis, CA

9.    Officer D. Dodd
      Clovis Police Department
      1233 Fifth Street
      Clovis, CA 93612

10.   Officer S. Griffith
      Clovis Police Department
      1233 Fifth Street
      Clovis, CA 93612

11.   Officer G. Cartwright
      Clovis Police Department
      1233 Fifth Street
      Clovis, CA 93612

///

16

12. Officer Brent Hershberger
    Clovis Police Department
    1233 Fifth Street
    Clovis, CA 93612

13. Officer J. Boldt
    Clovis Police Department
    1233 Fifth Street
    Clovis, CA 93612

14. Officer Mike Lichti
    Clovis Police Department
    1233 Fifth Street
    Clovis, CA 93612

15. Oscar Sandoval
    402 N. Glenn #201
    Fresno, CA

16. Domingo Santiago
    2611 E. Clay
    Fresno, CA

17. Jose Jacobo
    139 W. Saginaw, #M
    Fresno, CA

18. Isidro Del Rio
    3916 E. Buckingham
    Fresno, CA

19. Paul Hickley
    Fresno County Public Defender's Office
    2220 Tulare Street, Ste. 300
    Fresno, CA 93721

20. Kenneth Taniguchi
    Fresno County Public Defender's Office
    2220 Tulare Street, Ste. 300
    Fresno, CA 93721

21. Deanne VonBerg
    Fresno County Public Defender's Office
    2220 Tulare Street, Ste. 300
    Fresno, CA 93721

22. Deborah Harper
    Fresno County Public Defender's Office
    2220 Tulare Street, Ste. 300
    Fresno, CA 93721

23. Elizabeth Diaz
    Fresno County Public Defender's Office
    2220 Tulare Street, Ste. 300
    Fresno, CA 93721

17

1   24.  Maribel Cuevas
         7005 N. Maple Avenue, Ste. 108
2
3   25.  Officer Michael Burrow
         Fresno Police Department
         2323 Mariposa
4        Fresno, CA

5   25.  Officer John Chandler
         Fresno Police Department
6        2323 Mariposa
         Fresno, CA
7
    26.  Officer Ken Dodd
8        Fresno Police Department
         2323 Mariposa
9        Fresno, CA

10  27.  Sgt. Eric Eide
         Fresno Police Department
11       2323 Mariposa
         Fresno, CA
12
    28.  Officer Peter Flores
13       Fresno Police Department
         2323 Mariposa
14       Fresno, CA

15  29.  Officer Don McKenzie
         Fresno Police Department
16       2323 Mariposa
         Fresno, CA
17
    30.  Officer Jason Musser
18       Fresno Police Department
         2323 Mariposa
19       Fresno, CA

20  31.  Officer Maria Mustafich
         Fresno Police Department
21       2323 Mariposa
         Fresno, CA
22
    32.  Officer Michael Orndoff
23       Fresno Police Department
         2323 Mariposa
24       Fresno, CA

25  33.  Officer Tim Stewart
         Fresno Police Department
26       2323 Mariposa
         Fresno, CA
27
///
28

18

34. Officer Michael Troehler
    Fresno Police Department
    2323 Mariposa
    Fresno, CA

35. Officer Bill Trollinger
    Fresno Police Department
    2323 Mariposa
    Fresno, CA

**Expert**

36. Joseph Callanan
    Specialized Training Consultants
    2900 N. Government Way, PMB #324
    Coeur d'Alene, ID 83815

37. Harold L. Seymour, Ph.D.
    Clinical and Forensic Psychology
    5740 N. Palm Avenue, Ste. 105
    Fresno, CA 93704

38. Paul J. Markovitz, M.D., Ph.D.
    7409 North Cedar Avenue, suite 101
    Fresno, CA 93720

**Non-Retained**

39. Kevin Wingert, M.D.
    Clovis Medical Providers
    681 Medical Center Drive West, Ste. 103
    Clovis, CA 93711

40. Hongshik Han, M.D.
    7005 N. Maple Avenue, Ste. 108
    Fresno, CA 93720

41. Richard Weinberg, M.D.
    Central California Ear, Nose & Throat Medical Group
    1351 E. Spruce
    Fresno, CA 93720

42. Ron Santore, P.A.
    Central California Faculty Medical Group
    4910 Clinton Way, Ste. 101
    Fresno, CA 93727

43. Lindsay Pimentel
    Hand to Shoulder Rehab, Inc.
    7005 N. Maple Avenue, Ste. 104
    Fresno, CA

///

///

1   44.  Perminder Bhatia, M.D.
         Neuro-Pain Medical Center
2        736 E. Bullard Avenue, Ste. 101
         Fresno, CA 93710
3
4   45.  Serenity Holder, Paramedic
         American Ambulance
         2911 E. Tulare
5        Fresno, CA 93721

6   46.  James Garza, EMT
         American Ambulance
7        2911 E. Tulare
         Fresno, CA 93721
8
9   47.  Kelly Houts, R.N.
         Community Regional Medical Center
         Fresno, CA
10

11       Counsel are each ordered to submit a list of witnesses to

12  the court along with a copy for use by the Courtroom Deputy

13  Clerk, on the same date and at the same time as the list of

14  exhibits are to be submitted as ordered below.

15       **CAUTION**

16       Counsel are cautioned that expert witnesses, including

17  percipient experts, must be designated as such.  No witness, not

18  identified as a witness in this order, including "rebuttal"

19  witnesses, will be sworn or permitted to testify at trial.

20            **X.   EXHIBITS, SCHEDULES AND SUMMARIES**

21       The following is a list of documents or other exhibits that

22  the parties expect to offer at trial.

23       **CAUTION**

24       Only exhibits so listed will be permitted to be offered into

25  evidence at trial, except as may be otherwise provided in this

26  order.  No exhibit not designated in this pretrial order shall be

27  marked for identification or admitted into evidence at trial.

28  ///

**A.    Plaintiff's Exhibits**

    1.    Photographs of the scene.

    2.    Photographs of Plaintiff's injuries.

    3.    Defendant Troehler's incident report.

    4.    Citation issued by Defendant to Plaintiff.

    5.    Plaintiff's insurance cards.

    6.    Fresno Police Department policies and procedures.

    7.    Aerial map/photo of scene.

    8.    Medical bills.

**B.    Defendant's Exhibits**

    1.    Photographs taken of the scene of the incident.

    2.    Photographs of Plaintiff taken after the subject incident.

    3.    All police reports from case no. 06-76260, including reports prepared by officer Troehler, Officer Orndoff and Officer Flores.

    4.    Fresno Police Department event report no. 06-BE0436.

    5.    All medical records concerning Plaintiff's injury claims, subpoenaed or obtained through discovery.

    6.    Fresno Police Department Standing Orders produced pursuant to a stipulated protective order.

    7.    March 23, 2009 - Order for Disciplinary Action to Darren Hise.

    8.    May 13, 2008 - Summary of Oral Reprimand to Darren Hise.

    9.    August 25, 2008 - memorandum regarding meeting with Darren Hise.

    10.   April 11, 2008 - written reprimand to Darren Hise.

11.   January 19, 2007 - written reprimand to Darren Hise.

12.   Deposition transcript of Darren Hise taken in the case of *Muldrew v. County of Fresno*, case no. 1:09-cv-0023 OWW DLB.

13.   Clovis Police Reports dated July 5, 1996, September 16, 2003, February 24, 2005, May 26, 2005, December 8, 2005, May 17, 2007 regarding Randall Williams.

14.   Internal Affairs statement of Randall Williams.

15.   Notice to appear.

16.   Misdemeanor Advisement, waiver of rights, and plea form dated 6/13/08.

## XI.   DISCOVERY DOCUMENTS

Only specifically designated discovery requests and responses will be admitted into evidence.  Any deposition testimony shall be designated by page and line and such designations filed with the Court on or before August 6, 2010. The opposing party shall counter-designate by line and page from the same deposition and shall file written objections to any question and answer designated by the opposing party and filed with the court on or before August 16, 2010.

Written discovery shall be identified by number of the request.  The proponent shall lodge the original discovery request and verified response with the courtroom deputy one day prior to trial.  The discovery request and response may either be read into evidence, or typed separately, marked as an exhibit, as part of the exhibit marking process, and offered into evidence.

1.   Officer Troehler's Special Interrogatories, Set No. 1; and Plaintiff's responses.

2.   Officer Troehler's Request for Production, Set No. 1;

and Plaintiff's response, and further response.

3.    Depositions and attached exhibits of all persons deposed in this case.

4.    Rule 26 disclosures of the parties.

5.    Documents produced pursuant to subpoenas or deposition notices.

## XII.   STIPULATIONS

1.    The parties entered into a Stipulated Protective Order pertaining to certain documents produced by Defendants that are deemed confidential.   The use of these documents at trial will be addressed at the time of the pre-trial conference.

## XIII.   AMENDMENTS - DISMISSALS

1.    Although no formal dismissal was filed, Plaintiff's third claim for relief in the First Amended Complaint which alleges intentional infliction of emotional distress, and negligent infliction of emotional distress, were withdrawn. Also, Sandra Williams has been dismissed as a party in this case.

## XIV.   FURTHER TRIAL PREPARATION

A.    Trial Briefs.

Counsel are directed to file a trial brief in this matter ten days prior to the date of commencement of trial, as provided by Local Rule 285, Local Rules of Practice for the Eastern District of California.   No extended preliminary statement of facts is required.   The brief should address disputed issues of substantive law, disputed evidentiary issues of law that will not be resolved in limine, and any other areas of dispute that will require resolution by reference to legal authority.

///

B.   <u>Duty of Counsel To Pre-Mark Exhibits</u>.

1.   Counsel for the parties are ordered to meet and conduct a joint exhibit conference on August 18, 2010, at 10:00 a.m. at the law offices of Weakley, Arendt & McGuire Law Offices, 1630 East Shaw Avenue, Suite 176, Fresno, California for purposes of pre-marking and examining each other's exhibits and preparing an exhibit list.  All joint exhibits will be pre-marked JX1-JX50; all of the plaintiff's exhibits will be pre-marked with numbers 51-150; all of defendant's exhibits will be pre-marked with numbers 151-250.

2.   Each and every page of each and every exhibit shall be individually Bates-stamped for identification purposes, and paginated with decimals and arabic numerals in seriatim; i.e., 1.1, 1.2, 1.3 . . ..

3.   Following such conference, each counsel shall have possession of four (4) complete, legible sets of exhibits, for use as follows:

a.   Two (2) sets to be delivered to the Courtroom Deputy Clerk, Renee Gaumnitz, no later than 4:00 p.m. on August 27, 2010, an original for the court and one for the witness.

b.   One (1) set to be delivered to counsel for the opposing party and one (1) set to be available for counsel's own use.

4.   Counsel are to confer to make the following determination as to each of the exhibits proposed to be introduced into evidence and prepare separate indexes, one listing joint exhibits, one listing each party's exhibits:

a.   Joint exhibits, i.e., any document which both

1   sides desire to introduce into evidence, will be marked as a

2   joint exhibit (JX), and numbered JX1-___.  Joint exhibits shall

3   be listed as such in the exhibit list in a column that notes they

4   are admitted into evidence without further foundation;

5        b.   As to any exhibit, not a joint exhibit, to which

6   there is no objection to its introduction into evidence, the

7   exhibit will be marked as Plaintiff's Exhibit ___, or Defendant's

8   Exhibit ___ in evidence, and will be listed in the exhibit list

9   as the exhibit of the offering party;

10       c.   The exhibit list shall include columns for noting

11  objections to exhibits.  The first column will list any

12  objections as to foundation; i.e., Plaintiff's Foundation 2 –

13  "not authenticated."

14       d.   The exhibit list shall include a second column for

15  noting substantive objections to exhibits based on any other

16  grounds; i.e., "hearsay, improper opinion, irrelevant."

17       e.   The exhibit list shall include a description of

18  each exhibit on the left-hand side of the page, and the three

19  columns outlined above (as shown in the example below).

20                         **List of Exhibits**

21                         Admitted       Objection      Other
    **Exhibit #**   **Description**   **In Evidence**   **To Foundation**   **Objection**
22

23       f.   The completed exhibit list shall be delivered to

24  Renee Gaumnitz CRD on or before August 27, 2010, at 4:00 p.m.

25       g.   If originals of exhibits cannot be located, copies

26  may be used, however, the copies must be legible and accurate.

27  If any document is offered into evidence that is partially not

28  legible, the Court sua sponte will exclude it from evidence.

**C.    Discovery Documents**.

1.    Counsel shall file a list of discovery documents with Renee Gaumnitz CRD at the same time and date as the witness and exhibit lists are lodged with her, unless the discovery documents are marked as exhibits, which counsel intend to use at trial by designating by number, the specific interrogatory, request for admission, or other discovery document.  Counsel shall comply with the directions of subsection XII (above) for introduction of the discovery document into evidence.

**D.    Motions In Limine**.

1.    The motions in limine shall be filed by August 6, 2010, and any responses shall be filed by August 16, 2010.  The Court will conduct a hearing on motions in limine in this matter on August 20, 2010, at 11:00 a.m. in Courtroom 3, Seventh Floor, before the Honorable Oliver W. Wanger United States District Judge, at which time all evidentiary objections, to the extent possible, will be ruled upon, and all other matters pertaining to the conduct of the trial will be settled.

**E.    Trial Documents**.

1.    **Exhibits To Be Used With Witness**.  During the trial of the case, it will be the obligation of counsel to provide opposing counsel not less than forty-eight hours before the witness is called to the witness stand, the name of the witness who will be called to testify and to identify to the Court and opposing counsel any exhibit which is to be introduced into evidence through such witness that has not previously been admitted by stipulation or court order or otherwise ruled upon, and to identify all exhibits and other material that will be

1  referred to in questioning of each witness.  If evidentiary

2  problems are anticipated, the parties must notify the court at

3  least twenty-four hours before the evidence will be presented.

4  F.    Counsel's Duty To Aid Court In Jury Voir Dire.

5       1.    Counsel shall submit proposed voir dire questions, if

6  any, to Renee Gaumnitz CRD at rgaumnitz@caed.uscourts.gov on or

7  before August 26, 2010, at 4:00 p.m.  Counsel shall also prepare

8  a joint "statement of the case" which shall be a neutral

9  statement, describing the claims and defenses for prospective

10 jurors, to be used in voir dire.

11      2.    In order to aid the court in the proper voir dire

12 examination of the prospective jurors, counsel are directed to

13 lodge with the Court the day before trial a list of the

14 prospective witnesses they expect to call if different from the

15 list of witnesses contained in the Pre-Trial Order of the Court.

16 Such list shall not only contain the names of the witnesses, but

17 their business or home address to the extent known.  This does

18 not excuse any failure to list all witnesses in the Pre-Trial

19 Order.

20      3.    Counsel shall jointly submit, to Renee Gaumnitz CRD the

21 Friday before trial, a neutral statement of the claims and

22 defenses of the parties for use by the court in voir dire.

23 G.    Counsel's Duty To Prepare And Submit Jury Instructions.

24      1.    All proposed jury instructions shall be filed and

25 served on or before August 30, 2010, by 4:00 p.m.  Jury

26 instructions shall be submitted in the following format.

27      2.    Proposed jury instructions, including verdict forms,

28 shall be submitted via e-mail to dpell@caed.uscourts.gov

1    formatted in WordPerfect for Windows X3.  Counsel shall be
2    informed on all legal issues involved in the case.

3        3.    The parties are required to jointly submit one set of
4    agreed upon jury instructions.  To accomplish this, the parties
5    shall serve their proposed instructions upon the other fourteen
6    days prior to trial.  The parties shall then meet, confer, and
7    submit to the Court the Friday before the trial is to commence,
8    one complete set of agreed-upon jury instructions.

9        4.    If the parties cannot agree upon any instruction, they
10   shall submit a supplemental set of instructions designated as not
11   agreed upon by August 30, 2010, at 4:00 p.m.

12       5.    Each party shall file with the jury instructions any
13   objection to non-agreed upon instructions proposed by any other
14   party.  All objections shall be in writing and shall set forth
15   the proposed instruction objected to in its entirety.  The
16   objection should specifically set forth the objectionable matter
17   in the proposed instruction and shall include a citation to legal
18   authority explaining the grounds for the objection and why the
19   instruction is improper.  A concise statement of argument
20   concerning the instruction may be included.  Where applicable,
21   the objecting party shall submit an alternative proposed
22   instruction covering the subject or issue of law.

23       6.    Format.  The parties shall submit one copy of each
24   instruction.  The copy shall indicate the party submitting the
25   instruction, the number of the proposed instruction in sequence,
26   a brief title for the instruction describing the subject matter,
27   the test of the instruction, the legal authority supporting the
28   instruction, and a legend in the lower lefthand corner of the

instruction: "Given," "Given As Modified," "Withdrawn" and "Refused" showing the Court's action with regard to each instruction and an initial line for the judge's initial in the lower right-hand corner of the instruction.  Ninth Circuit Model Jury Instructions should be used where the subject of the instruction is covered by a model instruction.

7.    All instruction should be short, concise, understandable, and neutral statements of the law.  Argumentative or formula instructions will not be given, and should not be submitted.

8.    Parties shall, by italics or underlining, designate any modifications of instructions from statutory authority, or any pattern instruction such as the Model Circuit Jury Instructions or any other source of pattern instructions, and must specifically state the modification made to the original form instruction and the legal authority supporting the modification.

9.    Proposed verdict forms shall be jointly submitted or if the verdict forms are unagreed upon, each party shall submit a proposed verdict form.  Verdict forms shall be submitted to the Courtroom Deputy Clerk on the first day of the trial.

10.   Failure to comply with these rules concerning the preparation and submission of instructions and verdict forms may subject the non-complying party and/or its attorneys to sanctions.

### XV.   USE OF LAPTOP COMPUTERS/POWERPOINT FOR PRESENTATION OF EVIDENCE

1.    If counsel intends to use a laptop computer for presentation of evidence, they shall <u>contact Renee Gaumnitz CRD</u>

<u>at least one week prior to trial</u>.   The Courtroom Deputy Clerk
will arrange a time for any attorney to bring any laptop to be
presented to someone from the Court's Information Technology
Department, who will provide brief training on how the parties'
electronic equipment interacts with the court's audio/visual
equipment.   If counsel intend to use PowerPoint, the resolution
should be set no higher than 1024 x 768 when preparing the
presentation.

    2.   ALL ISSUES CONCERNING AUDIO-VISUAL MATERIALS AND
COMPUTER INTERFACE WITH THE COURT'S INFORMATION TECHNOLOGY SHALL
BE REFERRED TO THE COURTROOM DEPUTY CLERK.

XVI.   FURTHER DISCOVERY OR MOTIONS

    1.   Discovery is closed.

XVII.   SETTLEMENT

    1.   Settlement negotiations have been exhausted.

XVIII.   SEPARATE TRIAL OF ISSUES

    1.   As to the amount of punitive damages, if any, the
amount will be tried in a second phase of a continuous trial
before the same jury.

XIX.   IMPARTIAL EXPERTS, LIMITATIONS OF EXPERTS

    1.   None.

XX.   ATTORNEYS' FEES

    1.   Plaintiff seeks attorney's fees under 42 U.S.C. § 1988.

    2.   Defendant also reserves the right to move for an award
of attorney fees under § 1988; and to contest any claim to
attorney fees.

XXI.   ESTIMATE OF TRIAL TIME

    1.   Five days.

30

1

## XXII.   TRIAL DATE

2   1.   August 31, 2010, at 9:00 a.m., in Courtroom 3, on the
3   Seventh Floor.

4   ### XXIII.   NUMBER OF JURORS AND PEREMPTORY CHALLENGES

5   1.   There will be an eight person jury, each side has four
6   peremptory challenges.

7   ### XXIV.   AMENDMENT OF FINAL PRETRIAL ORDER

8   1.   The Final Pretrial Order shall be reviewed by the
9   parties and any corrections, additions, and deletions shall be
10   drawn to the attention of the Court immediately.   Otherwise, the
11   Final Pretrial Order may only be amended or modified to prevent
12   manifest injustice pursuant to the provisions of Fed. R. Civ. P.
13   16(e).

14   ### XXV.   MISCELLANEOUS

15   1.   Not applicable.

16

17   IT IS SO ORDERED.

18   Dated:   **July 27, 2010**                          **/s/ Oliver W. Wanger**
                                                  UNITED STATES DISTRICT JUDGE
19

20

21

22

23

24

25

26

27

28

31